## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Gregory Palmore, #248827, ) | Civil Action No. 9:08-2465-GRA-BM |
| ) | |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| v. ) | |
| ) | |
| Greenville Detention Center, ) | |
| Dr. Sherman and Nurse Eastergard, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, presently an inmate with the South Carolina Department of Corrections, alleges violations of his constitutional rights while he was incarcerated at the Greenville County Detention Center.

The Defendants filed a motion for summary judgement pursuant to Rule 56, Fed.R.Civ.P. on December 22, 2008. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on December 30, 2008, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted thereby ending his case. Plaintiff thereafter filed a response in opposition as well as his own motion for summary judgment on January 20, 2009, following which the Defendants filed a reply memorandum on February 9, 2009. Plaintiff filed a surreply on March 3, 2009, to which the Defendants' responded with a filing on March 9, 2009.

1



These motions are now before the Court for disposition.[1]

### Background and Evidence

Plaintiff alleges in his Verified Complaint[2], in toto, as follows:

I contacted staph infection at Greenville Detention Center doing the month of July 07 too Aug 07. Was not treated correctly still have out break of staph.

Plaintiff seeks monetary damages. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendants have submitted an affidavit from Sonya Moss, who attests that she is the R.N. Supervisor for the Greenville County Detention Center. Moss attests that in August or September 2005, personnel at the Detention Center first became aware that MRSA (Methacillin Resistant Staphylococcus Aurens) might be a potential health care issue for inmates housed in the Detention facility. MRSA is a type of staph infection that is resistant to an antibiotic call beta-lactam, which includes antibiotics that have traditionally been used effectively to treat staff infections. Moss attests that staph infections normally respond to antibiotic treatment, but that MRSA is a particular strain of staph that is resistant to traditional antibiotic therapy.

Moss attests that after it was discovered that staph infections might be a potential health care issue for inmates at the Detention Center, protocols to deal with inmates who are

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The parties have filed motions to dismiss or for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

2



diagnosed with MRSA were implemented. Moss has attached to her affidavit a copy of the standing orders and protocol for the medication and treatment of inmates at the Greenville County Detention Center who are suspected of having MRSA. These protocols were approved by the Defendants Sherman and Eastergard. See Court Docket No. 27-3. Moss attests that personnel and officials at the Detention Center have become consciously attentive to inmate health and safety as it relates to the issue of MRSA and the prevention and containment of that condition, and that reasonable and appropriate precautions have been implemented and/or followed to prevent the spread of MRSA and to treat inmates who exhibit signs and/or symptoms of MRSA.

Moss attests that on February 23, 2007, Plaintiff was booked into the Detention Center. Prior to being booked, Plaintiff was evaluated at the Greenville Hospital for left hand wounds, and upon discharge was directed to take antibiotics. On his intake screening, Plaintiff answered "yes" to bleeding/open sores by stating he had "gangrene left hand". Moss attests that it was also noted that Plaintiff had trauma to his left hand, and reported that he had been seen at St. Francis Hospital approximately three weeks previously. Plaintiff was thereafter seen by medical staff and noted to have an abscess on his left hand, with Plaintiff stating that it had been that way for over a month. Orders for an antibiotic (Keflex) per the Greenville Hospital's discharge instructions as well as a pain medication were started. A follow-up referral to the orthopedic/surgery clinic was also requested.

Plaintiff was released from the Detention Center a few days later, but on March 23, 2007, he was again booked into the Detention Center, at which time he answered "No" to all questions posed on the intake screening. Plaintiff was evaluated by medical staff the following day, at which time he noted that had received treatment from St. Francis Hospital approximately three weeks earlier for a left hand abscess. Plaintiff also reported tingling in his right foot and three



3

wounds were observed on his left hand.  Plaintiff was referred by the nurse to sick call, and an antibiotic (Keflex) and pain medication (Ultram) were started.  Two days later, an additional antibiotic (Bactrim) was ordered, and his pain medication was changed to Lortab.

On March 28, 2007, Plaintiff was evaluated by the Defendant Nurse Eastergard, who referred him to the Greenville Memorial Hospital emergency room for evaluation.  Plaintiff also received a dose of Lortab prior to transport.  Plaintiff was released from the hospital the following day with a final diagnosis of cellulitis in his left hand with directions to continue medications. Medical staff at the jail then restarted Plaintiff on Bactrim on April 7, 2007, and referred Plaintiff back to sick call.  On April 11, 2007, Plaintiff was evaluated by the Defendant Dr. Sherman who noted that Plaintiff had developed an abscess on the dorsum of his left hand back in January. Plaintiff was instructed to continue on Keflex with the additional antibiotic Bactrim and pain medication.  An x-ray was also ordered at that time, which was performed the following day and showed a "normal left hand".

Plaintiff was evaluated again by the Defendant Nurse Eastergard on April 20, 2007, who ordered an antibiotic (Clindamycin), pain medication, and referred Plaintiff to a hand clinic. The  clinic notes reflect that Plaintiff was also evaluated for pain in his legs and that Neurotin was ordered for neuropathy pain.  On April 26, 2007, Plaintiff filled out an Inmate Worker Medical Screening form, only answering "yes" to having diabetes.  He left the space relating to recent surgery, skin, or open soars blank, and listed his only medications as being glucotrols and glucophage.  Plaintiff also answered "no" to any other medical information that would affect work assignments, and denied any need to see the medical staff on the form.  The worker screening form was reviewed by medical staff on April 27, 2007, and based on Plaintiff's medical chart which showed that he was still receiving antibiotics, he was denied medical clearance to work.  Plaintiff



thereafter went to the hand clinic for his referral on May 2, 2007, with no new prescriptions being ordered.

On May 30, 2007, Plaintiff filled out another Inmate Worker Medical Screening form, again only answering "yes" to diabetes, with other answers consistent with the medical form he had filled out on April 26, 2007. On July 18, 2007, Plaintiff was evaluated by Dr. Sherman for hypertension. No indication was made of any other issues at that time. Plaintiff thereafter filled out another Inmate Worker Medical Screening form on July 24, 2007, this time answering "yes" to diabetes and high blood pressure, and "no" to questions about surgery, skin, or open sores. Plaintiff also answered "no" to any other medical information that would affect his work assignment, and denied needing any medical care.

On August 1, 2007, notes received from the surgery clinic refer back to Plaintiff's initial presentation concerning an abscess, with the evaluating doctor noting that after his laceration had been repaired, Plaintiff developed an abscess that was never irrigated or debrided due to his lack of coming to the hospital. It was noted that this abscess had "burst on its own". Plaintiff was thereafter evaluated again by Nurse Eastergard on August 6, 2007, at which time he stated he had pain and swelling in his foot that he believed he had received from a spider or bug bite. The evaluation notes reflect that Plaintiff had a bump on top of his right great toe with no drainage noted. An antibiotic (Bactrim) and pain medication (Lortab) were ordered, and it was noted that medical staff should observe for draining to culture. By August 10, 2007, Nurse Eastergard and Dr. Sherman noted that, after four days of antibiotics, Plaintiff's foot appeared more swollen, and it was planned for Plaintiff to move into the infirmary. Another antibiotic (Clindamycin) was ordered. By August 14, 2007 there had been a decrease in swelling. There was also drainage to his toe, and a culture was obtained. The culture was returned from the lab on August 18, 2007, indicating MRSA, at which

5



time Plaintiff was moved to Z-2 dorm for observation.  On August 19, 2007, a report was filed by operational staff noting that Plaintiff had admitted to hoarding pain medication.  By August 22, 2007 Plaintiff's foot was "getting better", and there was no further drainage.  Plaintiff was order to continue with his antibiotic treatment.  On August 23, 2007, Plaintiff's toe was found to have healed, and he was re-housed in the general population.

Moss attests that from the time Plaintiff was cleared to return to the general population he made no further requests regarding any type of infection, reporting only one incident of athlete's foot, which was treated.  Plaintiff was released from the Detention Center on January 9, 2008.  Moss attests that all medications prescribed to the Plaintiff were within established protocols and approved by the physician or nurse practitioner, and that Plaintiff received reasonable and appropriate care and treatment for the symptoms he presented.  See generally, Moss Affidavit, with attached Exhibits.

Plaintiff has submitted no exhibits or any other kind of evidence with his filings.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial."  Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth

6



a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4ᵗʰ Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

## I.

With respect to the Defendant Greenville Detention Center, this Defendant is a building or facility, and as such is not subject to suit under § 1983. Cf. Allison v. California Adult Authority, 419 F.2d 822, 823 (9th Cir. 1969) [California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983]; Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D.Pa. 1976); see generally Tyler v. Sullivan, No. 95-1232, 1996 WL 195295 at **1 (10th Cir. Apr. 22, 1996) ["The [district] court dismissed the detention facility as a defendant, finding that the facility, a building owned and operated by the county, is not a person or legally created entity capable of being sued."]; Preval v. Reno, 57 F. Supp.2d 307, 310 (E.D. Va. 1999) ["[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."] aff'd in part, modified in part on other grounds, vacated in part on other grounds, 203 F.3d 821 (4th Cir. 2000); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ["Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."]. Therefore, the Greenville Detention Center is entitled to dismissal as a party Defendant in this case.

## II.

With regard to the remaining Defendants, as employees of the Greenville Detention Center, they are subject to suit for damages under § 1983 in their individual capacity. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Inmates v. Owens, 561 F.2d 560 (4ᵗʰ Cir. 1977). Further, even though Plaintiff has now been transferred to the South Carolina Department of Corrections, his claim



for monetary damages survives his transfer.  See Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir.

1976).  Nonetheless, after careful review of the filings in this case as well as the arguments of the

parties, the undersigned finds and concludes that Plaintiff's claims are without merit and should be

dismissed.

    In order to proceed with a claim under § 1983 for denial of medical care, Plaintiff

must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant

was deliberately indifferent to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106

(1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.

1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th Cir.

1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).  Here, the evidence before this Court shows

that Plaintiff has received continuous and ongoing treatment for his medical complaints, and there

is simply no evidence to show that either Sherman or Eastergard was deliberately indifferent to any

serious medical need of the Plaintiff.  Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997

WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or

she 'knows of and disregards' an excessive risk to inmate health or safety.'"](quoting Farmer, 511

U.S. at 837).  Plaintiff's own self serving opinion that he should have been provided more rapid or

extensive medical care than he received is not sufficient to survive summary judgment, particularly

in light of the fact that he has presented no medical opinions or evidence of his own to support his

claim that he received inadequate treatment.  See Scheckells v. Goord, 423 F.Supp. 2d 342, 348

(S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not

qualified to determine...medical fitness, whether physical or mental; that is what independent medical

experts are for."]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though

pro se litigants are held to less stringent pleading standards than attorneys the court is not required



8

to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim].

        Plaintiff may, of course, pursue a claim in state court if he believes the medical care he received was inadequate.  That is not, however, the standard here, which is a higher standard of deliberate indifference.  Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999)["Deliberate indifference is a very high standard - a showing of mere negligence will not meet it."]; A.P. ex rel. Bazerman v. Feaver, No. 04-15645, 2008 WL 3870697 at *12 (11th Cir. Aug. 21, 2008)["[D]eliberate indifference requires a much higher standard of fault than mere or even gross negligence . . . ."].  Since the evidence before the Court is insufficient to raise a genuine issue of fact as to whether the named Defendant was deliberately indifferent to Plaintiff's serious medical needs, Plaintiff's federal § 1983 medical claim is subject to dismissal.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]; see also Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994); Sellers v. Henman, 41 F.3d 1100 (7th Cir. 1994); White v. Napoleon, 897 F.2d 103, 108-109 (3d Cir. 1990); Smart v. Villar, 547 F.2d 112 (10th Cir. 1976) [affirming summary dismissal].

### Conclusion

        Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendants' motion for summary judgment be **granted**, and that this

9



case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 11, 2009

Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

11
